oral argument 15 minutes for the plaintiff, 15 minutes to be shared by the defendants. Mr. William Chastain for the appellant. Good morning, Your Honors. I would like to reserve three minutes for rebuttal, Your Honor. Your Honor, I am Tyler Chastain from Knoxville, Tennessee representing Sumeru Health Care Group LLC in this matter. This is an appeal from a grant of summary judgment on behalf of the defendants, Claiborne County Hospital and Michael Hutchens. Your Honor, we have, this case is actually what I would call a prequel to a decision that actually this court already dealt with previously which I have recognized as regarding an immunization case that the court dealt with in docket number 11-65120 back in 2014 where Judge White rendered the decision in that matter. And I'm not here to re-argue any of those facts or any of the discussions. This case actually would be the prequel to that because this was filed in regards to actions that brought these health care centers to Tennessee and the representations and claims that resulted from those meetings. These claims for breach of contract, misrepresentation, unfair competition as to the hospital and to Mr. Hutchens who was the administrator, those are what these claims are about. I understand that the court has found after these clinics operated that they did not make proper payments to the physicians and those are not the issues before the court. The damages which would even be set forth in this are those startup costs, those matters which led the corporation, Sumeru, to come to Tennessee and pick Claiborne County as opposed to another county up in Hawkins County in Rogersville, Tennessee to be their location. Let's just get to preclusion, okay? That's what this case is about. You have four different counts. As I read these four counts they all either explicitly or implicitly rely upon breach of contract theory. The hospital did various things that caused these doctors to breach their contract. It seems to me that's all the counts. That's correct, Your Honor. But the finding of the administrative law judge in the other case find is that these doctors didn't breach their contract. So why is that not preclusive for everything that you're charging in this particular complaint? It's not preclusive because the issues as to the contract that brought the corporation, Sumeru, to Claiborne County, those are different claims than the claims that the physicians breached their contracts which were found to be preclusive. Let me say it a different way then. It seems like all of your claims, where I agree you dress it up a little bit differently, but it's all premised on a breach of contract. So even if you try to plead around that and plead a different claim, if it's based on a breach of contract and there isn't a breach of contract, at least as has been already determined by this other tribunal, then how do you win? How I win is by showing Mr. Hutchins says I will not do various activities for the hospital or on behalf of the hospital. Mr. Hutchins may engage in those activities or engage in representations which did not prove to be true. Those costs associated with setting up these clinics, paying monies to bring equipment and otherwise, paying leases, those things, once the clinics got there, if those representations were not true by Mr. Hutchins as to his activities and things that he may have engaged in on behalf of the hospital, that would be the only way I could win, Your Honor. But when I tried to sort of follow that through, it seemed that it really revolved around the cardiologist. You're correct, Your Honor. That is the primary physician that... Okay, but I looked for other things and all I saw was the cardiologist. The cardiologist would drive the practice because of this community. But the issue of the cardiologist performing these activities at the hospital when he could have been doing it at the clinic was litigated specifically in the administrative proceeding. And the ALJ said, no, he wasn't breaching the contract. The only reason he was doing it at the hospital was because the equipment was no good at the clinic. So, I mean, how do you, if that's the basis of the ultimate damage in the fraudulent inducement claim, how do you get around that fact? Your Honor, you're correct. They said that Dr. Nassim did not breach his contract. The question becomes, did Mr. Hutchins breach his contract that he formed with Sumeru as to his representations as to what the hospital would or would not do in relation to Sumeru and these physicians coming into town? There's no question that Mr. Hutchins at the hospital could not be breaching the physician's contract. But if he made representations, we were not going to do various activities, not going to promote and put other people in the hospital, allow them to have access to the hospital for various services. That's the only way I can win, Your Honor. And it's a tough argument. I understand. But the services, when you ask the question, okay, how did he breach that? How did he breach that is by providing extra hours to work in the emergency room, by providing incentives to having people be admitted in that hospital where they first had two patients. And you say, okay, but then if you look at the administrative decision, they're saying no. The administrative law judge said it's not true that they were working hours in the hospital that they should have been working in the clinic. It's already been decided, no, it was Sumeru that told them to work at the hospital. And it's already been decided that, no, the reason the procedures were done at the hospital is because they couldn't do them at Sumeru. So I don't know how you get from there to still having a viable claim that it was Hutchins who was responsible for that. My claim doesn't go as far as to say the physicians didn't, all the work done in the hospital. That's not where the claim goes to. That's actually moving to Claiborne County and forming the representations he made as to how we're going to let you have credentials, why we want you here, and why we want you to put your equipment, why we want you to put your investment in Claiborne County. I do not disagree with you, Judge Wyatt, that that's what they said. The primary issue, though, was did Dr. Cuddy and Sumeru pay those physicians? That was the primary issue in the ALJ, and they found that that was not correct. The other issues, I think, would be the secondary claims. There was not an adjudication as to whether there were real actions on behalf of the hospital or Mr. Hutchins to determine if that is a viable claim, that they said that's not a claim in the ALJ matter. I think the primary decision was did Sumeru and Dr. Cuddy breach the contract with the physicians. I have no dispute that that's what the finding was. The secondary, what your question is, is that a secondary finding or is that a primary finding? I don't believe that was the primary finding as to whether Hutchins or the hospital engaged in activities such that Dr. Cuddy and his practice would have been damaged for moving there, relying upon the representations, and creating an implied contract. So I believe the primary decision, yes, is exactly what you said. The secondary decision, which I don't believe has that issue preclusion, because that's not necessary to determine if he paid their contract. But it was because he was saying, look, we didn't breach the contract, the doctors did. And the reason we didn't pay them is, number one, they weren't doing what they were supposed to do. They were supposed to be working in the clinic, and instead they're working in the ER. That was one of the grounds, yes, Your Honor. Right, and the judge addressed that and said, no, they were working in the ER because you told them to work in the ER. So if Cuddy told them to work in the ER, I don't see how Hutchins can be responsible for them working in the ER. And then the second thing was about the cardiologist. Look, he's not doing what he's supposed to be doing. He's doing all these procedures in the hospital. He was supposed to be doing them here. And the DALJ said, well, the only reason he's doing them in the hospital is because he can't do them there because your equipment was no good. So then how do you, how is that secondary? Because it had to do with whether there was a breach by the doctor. I think it's still secondary because the claim was brought strictly by the Department of Labor saying you did not pay these foreign physicians according to their contract. And I do believe that Dr. Cuddy in his decision to represent himself in a 16-day hearing created an absolute fiasco of a record, which the court was well aware of. But I don't believe that was the primary. I think the DALJ had to address a lot of things that came up, but the primary decision was did you breach the contract. There was a decision of why did you come here, who told you to come here, what were the basis by which you would come here. And that's what this case is about. It's not about why they breached the contract later on. How do you get recovery for these claims that you're saying were up front, which don't seem to be what you're pleading in counts one through four, but assuming that we read them that way? How do you recover on those things if the damages are attributable to whether or not these doctors were induced to breach their contract? When the ALJs filed, they weren't induced to breach their contract. I think the ALJ decision cuts off what was originally filed, which would have been a larger lawsuit. I think the only damages which would be still feasible based on the ALJ's decisions would be your rental cost of the facilities, the expenditures of fees and expenses in recruiting the physicians and bringing them here. I think once they started working and signed the contract, I do believe, based upon, and as I told Judge Phillips, I believe I'm cut off at that point. I do not believe I can extend that. The original pleading wanted to go all the way through. The ALJ cuts me off because Dr. Cuddy would have found to commit a material breach of that contract with those physicians, such that those claims for damages for not working down the road, that's going to be gone, Your Honor. There's just no way to make a straight, compelling argument that's correct under the law based on the ALJ decision. It could only be those up front expenses. It's probably a lot less of a case, but you still had physician offices, physician equipment, office staff, things that you invested money in to come here. But that's as far as I think I can go, Your Honor. What did the hospital allegedly do that breached this implied agreement for this up front stuff? Once the physicians started to get their credentialing, Your Honor, as Dr. Cuddy put in the record, started providing them more access to use the hospital and not use the clinic. Which would be in breach of the doctor's contracts, right? Which would be in breach of theóthat's notóso I couldn't get damages for that. I would get for the representations made by Mr. Hutchins, which under Tennessee law we could have an examination of those representations. Did you promise that we rely upon those promises? Was there some detriment or reliance such that we would not have expended the money to come to Claiborne County, Tennessee, for the purpose of operating the clinics? That's the extent of the damages, Your Honor. And they make representations we're not going to do various things. I don't think the issue was tried in the ALJ as to every specific action that could have been taken by Claiborne County Hospital. I think from reading the record, which is 9,000 pages or so, the sole argument was they weren't working once they got there. And the ALJ hearing focused on they were not working once they got there. It didn't focus on what the hospital may or may not have been doing with them. All right? My time's up. Any questions? Thank you, Your Honor. Do we have one counsel now or two? Your Honor, we have two counsel here. Well, we're not sharing. I'm Reuben Pelow. I represent Mr. Hutchins and the Baptist Health System of East Tennessee. And Mr. Estep is here representing Claiborne County Hospital, but he's graciously allowed me to take the argument today, so it will just be me. Your Honor, this is, you know, the district court correctly granted summary judgment in this case. The defendants filed a motion for summary judgment and supported it with the deposition testimony from the parties that were taken in the case as well as findings of fact from the administrative proceedings. And those, as obviously the questions you've asked plaintiff's counsel here, clearly you see that all the facts that support the motion for summary judgment negate the essential elements of all of the plaintiff's claims in this case. Well, I will freely concede what I didn't understand, I don't think, until just this very minute, was that he's claiming not damages now for a breach of contract the ALJ found didn't occur, but he's saying that he had some upfront expenses that he wouldn't have incurred but for the hospital's misrepresentation. You've been trying this case, so has that been spelled out separately? Is that in one of these counts? If you look at the amended complaint, and clearly each of the counts pretty much say the same thing, that the defendants here induced these contracted physicians to breach their agreement with the plaintiff in this case. If you look at each count and did it by moonlighting at the hospital or not billing properly through the clinics and billing through the hospital instead or all the facts that were raised in the administrative proceeding, that's what the complaint alleges that the defendants did in this case. But it also alleges the inducement. It alleges that this guy was interested in having them set up there and that there was an agreement that you would, well, basically, that they'd provide a cardiologist, which they didn't have there, but they had sort of agreed on different practices that one would get one part of the business and the other would get the other part of the business. It's in the complaint. But the allegations, as far as the summary judgment goes, we submitted what the actual testimony was from Dr. Cuddy in this case in which he said that he agreed they had not ever met prior to February of 1999, and he agreed that as to what was discussed during that meeting, and none of those things were discussed. He didn't testify to any of those things being discussed during that meeting about any promises from the hospital to do certain things. He testified to the fact that he asked them to help him get an agreement with the emergency room independent contractor so that his physicians could work in the hospital, which undercuts his moonlighting arguments, and he also asked them to write some letters so that he could get his doctors through the INA process, and he said that's all they talked about. In fact, if you look at the contracts between the physicians, Dr. Nassim, who was the cardiologist, was already contracted with the plaintiff to provide services at the Tazewell Clinic three months before that meeting ever occurred. So the evidence in the record undercuts what the plaintiff is claiming now, and the plaintiff, all he provided in response to the motion for summary judgment was a declaration that contradicted that testimony, contradicted the evidence that was heard and found at the administrative proceeding as well. Well, if you read the complaint charitably, count two does seem to talk about how there was this allegedly fraudulent inducement to open the clinics, and that seems, at least to me, to be the one that comes the closest to saying there's some sort of implied contract that's different than the breach of contract that might separately support damages. So at least I think that's what he's saying. That is one allegation in the complaint. So how do you respond to that? Why would that be? Well, by the evidence that's actually in the record, which I just discussed about Dr. Cuddy's own testimony as to what was discussed, even after he had already hired Dr. Nassim and already decided to open the clinic, also his testimony in deposition was that the reason he decided to put a clinic in the Tazewell-Claiborne County area was based on information he received from the state of Tennessee, based on advice from one of his doctors, Ruche Gupta, that the clinics in those areas would be the best place to locate. There's no testimony in his deposition about these claims he's making now in an affidavit. You seem to be going beyond preclusions. This whole order, this decision of the district judge was based on issue of preclusion. You seem to be going on to say, well, if it isn't included within issue of preclusion, then we should have gotten summary judgment. But that isn't what we have before us here. That's a whole different question then of whether there are genuine issues of material fact that would support summary judgment independent of issue of preclusion. Issue of preclusion does take care of everything. Even if you take as true his allegations about these promises that were exchanged, he still has to prove that the damages that he's now claiming, this investment in this clinic, were caused by conduct of the defendants. And there's nothing in the record that his declaration is contradicted by his own testimony as to any promises that were made. Was there an ALJ finding as to this theory that he's advancing this morning about how there's this upfront cost that he can still recover? Well, the upfront cost was the cost of opening these clinics and the cost of running them. Those are the costs that he alleges in his complaint he's trying to recover. It's the same cost. The same causation problem exists, and the ALJ did find... Did the ALJ address that? I think they did. I think the ALJ did when she found that the doctors were fulfilling their obligations, they didn't breach their contracts, and that it was the difficult conditions due to insufficient planning, overexpansion, poor management of key functions such as billing, and underfunding of the clinics by the respondents that led to the closure of the clinics. The ALJ even said that if he hadn't retaliated against the physicians, they still would have been there making money and had a chance to have the income to keep the clinics open. He wouldn't have had the damages. He wouldn't have lost his upfront investment, which he... It's kind of a spin on trying to take those out, but that's part of the entire substantial loss that he alleges he claims... But he's saying he wouldn't have come to begin with. I'm sorry, Your Honor? He's saying he would not have come to begin with if... Which is undercut by his own deposition testimony that the reason he went there was based on information from the state of Tennessee, his own doctors who were up there, and that he had already entered into a contract with Dr. Nassim in November of 1998. Yeah, but he could have had him work in any of these underserved areas, right? He could have. But the fact... If you look at the evidence in the record, he had already made the decision to open that clinic prior to that meeting. There was nothing in his testimony about any of those contradictory statements he later made in the declaration about promises that were made. So if you look at what's in the record, it contradicts... What's in his statement, his declaration, which he relies on solely in response to the motion for summary judgment, is contradicted by his actual deposition testimony and what was testified to at the administrative proceeding. Mr. Chastain seemed to be pretty candid this morning to say his request for damages in this case is cut off at a certain point by virtue of the ALJ decision. Have you ever talked to him about what is his claim for damages that he thinks is not cut off? Do you know what he's demanding here? No. Well, I guess the prayer for relief was $2 million. We don't know... No, he was not able to come up with the accounting records in his deposition to actually spell out what comprised that $2 million. So we were never able to nail that down. That would have been in subsequent discovery had we not filed a motion for summary judgment. So the issue of this upfront cost that seemingly is not blocked by the ALJ decision under his theory, that hasn't been discussed or mediated or anything. We don't even know what it is. Well, we don't know what his actual damages are, what those actual costs are. The complaint is $2 million. He's already said the bulk of that, he agrees, is barred by the ALJ decision. And I submit that it's all barred because... I got that, but I'm just trying to figure out, have you guys talked about what is left? We asked him in his deposition those questions, and we're not given...he didn't have the information at that time as to what that was. Anything else? I would just respectfully submit, Your Honor, I believe that all of the claims require, in this case, that the plaintiff prove that the contractor physicians breached their agreements as he also claimed in the ALJ proceeding, and that those breaches caused by defendant's conduct caused the damages, which would have included the upfront investment as well as all the continuing cost of running those clinics until he closed it. And he cannot, the facts in the record supporting summary judgment, negate those essential elements of this claim. We understand your position. Thank you. Mr. Chesson, I'm just speaking for myself, but it's frustrating when the case gets up here and apparently you guys don't even know what it is you're arguing about and you haven't discussed it. So can you, by Friday of next week, send him an itemized claim of what you think is still left in damages in this case? Yes, Your Honor, I will do so. And support it with whatever you've got to support it? Yes, Your Honor. Then you respond to him in a week? Thank you. And I do want to point out... We don't need to see that between you guys. That's fine, Your Honor. And once this discussion starts going, if you think that the circuit mediator would then be of some assistance, then call him and tell him. I will do so, Your Honor. I will provide it to Mr. Estep and to Mr. Pila. But the court does not need it at all, is that correct? Just so I don't mess up. I don't need to say anything. Don't file this stuff with us. Just let us know whether you want us to delay because you're talking. The only other thing that I would bring up, Your Honor, is I also addressed that at the district court and the court referenced that I made the same statement on the damages in the district court opinion. So I wanted to make sure the court knew that we had brought that up. And Dr. Cuddy's deposition, I think, was taken in 2003 or 2004 before the ALJ matter. So we have not had any other discovery. I just appreciate your time, Your Honor, this morning. Have a good weekend. Thank you. All right. Thank you. Case will be submitted. That concludes the docket. Please recess the court.